**Glenn H. SEWELL, Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY, a Delaware Corporation, Appellee.**

No. 77-2072.

United States Court of Appeals, Tenth Circuit.

Argued March 16, 1979.

Decided Aug. 24, 1979.

---

Samuel King, Salt Lake City, Utah, for appellant.

Ray R. Christensen of Christensen, Gardiner, Jensen & Evans and Chris Wangsgard of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for appellee.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

SETH, Circuit Judge.

We previously considered this case in *Sewell v. Phillips Petroleum Company, Inc.*, Nos. 76–1030–31 (10th Cir. March 21, 1977). We held there that the crucial "retained control" jury instruction for imputing liability to an owner for injuries caused by a negligent independent contractor was erroneous, and that the evidence clearly failed to support plaintiff's alternative theories for imposing liability on the defendant. We reversed the general verdict in favor of plaintiff and remanded for a new trial. The parties stipulated to the trial judge on remand that no issue remained to be determined and agreed to submit the liability issue to the trial judge on the basis of the trial record. They also agreed that if the trial judge found in favor of plaintiff on the liability issue, then the case would proceed to a jury for a determination of damages. Since there was no further evidence to be presented, the trial judge entered judgment for the defendant in light of our holding.

Appellant complains here that he was entitled to judgment as a matter of law, and that our previous holding relied on misstatements of the facts in the defendant's brief. He also maintains entitlement to remand on the punitive damages issue which we considered and denied in our previous holding.

■ We believe it unnecessary to reiterate the relevant facts because they are discussed in detail in our previous holding. The case involved a suit for damages for injuries sustained by plaintiff while working in an excavated eleven-foot hole. Plaintiff was employed by Harvey W. Eckman & Associates which had contracted with the defendant to install 10,000-gallon gasoline storage tanks at defendant's gasoline stations. Plaintiff's principal theory at trial was that defendant "retained and exercised control" over the contractor's work and was therefore liable for plaintiff's inju-

ries. The relevant jury instruction failed to explain the necessity for "active participation" by the defendant as required by Utah law. *United States v. Page*, 350 F.2d 28 (10th Cir.); *Dayton v. Free*, 46 Utah 277, 148 P. 408. We noted further that no evidence presented at trial indicated the defendant could be held liable under this theory or the alternative theories.

Appellant raises here the same issues discussed previously. No further evidence was produced on remand. We see no purpose in repeating the basis for our previous holding. Appellant's arguments are simply unpersuasive.

■ We do address, however, the contention that the previous holding relied on misstatements in the defendant's brief. The record clearly shows a lack of evidence supporting the "retained control" theory. Furthermore, on plaintiff's alternative business invitee theory, the danger arose from the work performed on the premises and was readily apparent to the plaintiff. Defendant was under no duty to guard against such an obvious danger. *Texaco, Inc. v. Pruitt*, 396 F.2d 237 (10th Cir.). Appellant's contention has no merit because the record provides the evidence necessary for determining that defendant was not liable as a matter of law.

AFFIRMED.

McKAY, Circuit Judge, concurring in the result:

Although I believe that the dissenting opinion may correctly characterize the result which should have been reached in the prior appeal brought in this case, I believe the instant appeal is in substance only a much-belated petition for rehearing. Rightly or wrongly, the issues that divide the other panel members were decided in the earlier appeal, and the time for asking this court's reconsideration of its determination has long since expired. All purported defects in the earlier disposition would have been known to appellant during the period in which filing for rehearing would have been timely. I therefore agree with the decision to affirm.

Nonetheless, I believe a troubling subsidiary matter should be addressed. There appears to be a substantial likelihood that disciplinary proceedings are in order. If counsel for appellant is correct, counsel for appellee deliberately misstated material facts to this court in the brief he filed in the prior appeal. If counsel for appellee is correct, counsel for appellant has leveled false charges of serious professional impropriety against a member of the bar. Both charges are extremely grave. If either is true, disciplinary sanctions are in order.

We have not investigated the charges and countercharges raised in this case, nor is such an undertaking the proper responsibility of this court in the first instance. I am, however, mailing a copy of this opinion to the Commissioners of the Utah State Bar, of which both attorneys are members, for their appropriate disposition. I will also direct the clerk of this court to supply the Commissioners with copies of the relevant materials.

In a growing number of cases, adversarial rivalry has degenerated into accusations of unethical conduct. This court will not tolerate false charges of this variety. Neither will it abide the filing of dishonest statements by practitioners. We expect the highest standard of care by attorneys in correctly citing facts and cases. If necessary, when deliberate or grossly negligent miscitations occur, we will strike the briefs and leave the clients who are damaged thereby to malpractice remedies. We intend to apply an equal standard to false accusations of unethical conduct.

When misstatements of the type discussed here do occur, opposing counsel should note the errors in a responsive brief. Misconduct should not be so characterized in the briefs on appeal, lest the argument shift to focusing on the integrity of practitioners rather than the substantive issues raised in the appeal. Where the misstatements suggest the likelihood of misconduct, opposing counsel should file a charge with the appropriate bar authorities. We will ourselves be alert to whether the challenged

statements suggest the propriety of disciplinary proceedings and will, as in the instant case, initiate appropriate action when the opposing attorney has not already done so.

Having outlined our views in this matter generally, we repeat that we express no view at this time concerning which attorney is correct in the instant dispute. We assume that the matter will be resolved in a more appropriate forum so that the rights of the litigants will not be further affected by this controversy.

I am authorized to state that SETH, C. J., concurs in the views expressed in this opinion on the matter of professional misconduct on the part of attorneys who practice before us.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent.

This case was appealed on a previous occasion. It was reversed and remanded for a new trial. The panel, with the exception of Chief Judge Seth, was different on the prior appeal.

The complaint was originally filed in this case on February 8, 1974. Plaintiff was injured as a result of the cave-in of an excavation wall in a pit in which he was working. This excavation was made on behalf of Phillips Petroleum Company, the defendant herein. The depth of this was 11'6". The sides, however, were perpendicular and it is said that this is what caused it to cave.

It is not disputed that both the Uniform Building Code which was in effect in Salt Lake City and also OSHA, the United States agency, which was concerned with employee safety, required sloping and shoring. *See United States v. Dye Construction Company*, 510 F.2d 78 (10th Cir. 1975).

In this instance the pit was excavated for the purpose of installing a gasoline storage tank at a retail service station. An independent contractor performed the work. However, he did not apply for a permit. Had he done so there would have been an inspection together with orders requiring the sloping in accordance with the city ordinance and OSHA regulations.

The evidence established that the particular excavation was one of a large number in Salt Lake City by Phillips in order to store unleaded gasoline. Phillips was fully aware of the manner of excavating and was aware that it was illegal. There was evidence to show that proceeding without a permit and not sloping or shoring was the policy of Phillips. The evidence also showed that Phillips furnished the blueprint or plan for the excavation and installation of the tank. This called for a pit with perpendicular walls.

Plaintiff made the mistake of appealing the trial court's denial of punitive damages. The defendant cross-appealed the judgment on the merits. This court rejected plaintiff's appeal and adopted that of Phillips. The theory was that Phillips was shielded by the independent contractor concept.

The source of this disagreement goes back to the first appeal following the original trial of the case. The trial had been to a jury in early October 1975. On that occasion special interrogatories were submitted to the jury, and as a consequence of the jury's responses a verdict in the amount of $25,000 was returned in favor of the plaintiff. In answering the interrogatories, the jury responded that the defendant Phillips Petroleum Company was the proximate cause of the injury to the degree of 100%. Judgment was entered accordingly. The appeal which is referred to above followed.

This court reversed in an opinion filed March 21, 1977. It emphasized that Mr. Eckman had been employed by Phillips under an explicit contract which provided that he was an independent contractor. He was to dig an 11'6" pit in which the gasoline tank would be placed. In general, this court's opinion followed the proposition that in order to impose liability on the defendant, considering that Eckman was an independent contractor, it would have to appear that an exception existed to nonliability for torts of an independent contractor. The court went on to find that such exception was not present.

278

The basis on which the verdict was rendered at the trial was that Phillips, in truth, controlled the project; that it was hazardous to fail to perform sloping and shoring in a pit this deep; that such sloping and shoring was required by the County of Salt Lake and also by OSHA, a federal agency. It was also brought out that Phillips was fully aware of the fact that these precautions which were required by law had not been taken. Indeed, Phillips prepared the drawings and specifications which called for a perpendicular pit and which did not provide for sloping or shoring. It was also shown that this particular contractor was regularly employed, had excavated a large number of these in accordance with Phillips' plans, and with the full knowledge of Phillips. These facts resulted in Phillips having independent responsibility for the injury.

The opinion of this court remanded the case for a new trial. However, the trial judge concluded that he was unable to conduct a new trial in view of the decision. The court proceeded to enter an order of dismissal of the complaint with prejudice. In that order of dismissal it was pointed out that the contract provided that the contractor was to be an independent contractor, who would provide the necessary materials and labor, get the necessary licenses and observe all laws in excavating the premises and installing the tanks. The wording of the contract also provided that the contractor was to have complete control over the work.

While plaintiff, the order continued, was working on the excavation, a cave-in occurred causing his injuries. "There had been no sloping of the sides of the excavation as local law required. The plans for the work were provided by the defendant and contained no requirement of sloping." A representative of defendant had visited the project occasionally and the company, from past experience, could expect bidders would follow the plan provided. No Phillips' representative was present when it happened.

The trial court wrote that it had first granted the defendant's motion for summary judgment on the basis that defendant was insulated from responsibility, but upon reconsideration it became persuaded that it was a case that presented a jury question considering that the defendant company had vast experience in excavation and installation work, had an engineering department trained in this kind of work, and "in this very community had previously contracted for many such jobs and been familiar with the local law requiring sloping, notwithstanding that the company drew plans leaving out sloping, an expensive addition, and put it out to bid." The court said that since the company had gained an economic benefit from putting out a job for bid with a drawing for the work without sloping, the issue of whether this was negligence should be presented to the jury on the theory that such may be an exercise of control that would deprive the company of the protection of the contract which placed responsibility with the independent contractor. The court then went on to say:

The case was presented to the jury and plaintiff was awarded a verdict of $25,000. Plaintiff appealed the court's dismissal of the claim of punitive damages and defendant cross-appealed, contending there were no issues of fact for the jury and that, as a matter of law, judgment should be entered in favor of defendant no cause of action on plaintiff's complaint. The case was argued to the Court of Appeals in November, 1976, and on March 21, 1977, the Court handed down its decision reversing the judgment and remanding the case for a new trial.

Thereafter the trial court met with counsel for the parties to hold a pretrial in preparation for a retrial. It was stipulated that all of the evidence had been presented at the first trial and that the matter should be presented to the trial court, based on the records and brief of counsel, for its decision.

The court has carefully reviewed the facts in the record, the ruling of the Circuit Court of Appeals for the Tenth Circuit, the briefs of counsel and, deeming itself fully advised, enters the following as its ruling and verdict in the matter.

IT IS HEREBY ORDERED that defendant be granted a verdict of no cause of action on plaintiff's complaint.

The court believes that under the facts and the law provided by the Circuit this is the only verdict that could be entered. On page 3 of the opinion of the Appellate Court the Court ruled:

There is no question that Eckman was an independent contractor.

To impose liability on the defendant there must be shown an exception to the general rule of non-liability for torts of an independent contractor either through the exercise by the defendant of control over a delegable duty, or by showing a non-delegable duty.

The opinion then proceeds to demonstrate that neither of the two alternatives is present in this case. It follows, therefore, that plaintiff can establish no basis for liability.

In holding that the defendant retained no control of the work (over a delegable duty), the Court said:

There was shown no active participation in the work by defendant's inspections of the job site. *The defendant never exercised control of the work* and Eckman was under a contractual duty to comply with proper procedures.

\* \* · \*

[a]lthough the drawings and specifications did not specify sloping, they in themselves did not show control in the absence of some affirmative act.

*The defendant, on this record, did not retain control of the work.* (Emphasis added.)

Since the parties have no more evidence to present, this ruling is determinative in this alternative.

As to the possibility of its being a situation of a non-delegable duty, the Appellate Court said:

As for nondelegable duties which are described as being "inherently dangerous" . . . this Circuit has expressed "serious doubts as to whether the doctrine of non-delegable duty as here

involved applies to injuries of employees of the independent contractor."

In concluding the opinion, the Court added:

In any event, the defendant owed no duty to *plaintiff.* (Emphasis added.)

With the parties stipulating there is no more evidence to present, under the opinion of the Circuit there is nothing left to try.

Judgment, therefore, should be, and is, entered for defendant, no cause of action on plaintiff's complaint.

DATED this 20th day of September, 1977.

I have quoted and shown the trial court's opinion on remand in detail for the reason that it shows, in my opinion, that the trial court was somewhat startled to receive this court's opinion, and I must confess that I had similar feelings when I first heard the case on the present appeal. My first exposure to the case was the occasion of oral arguments on the second appeal.

Being of the opinion that there has been a miscarriage of justice, it is my conclusion that the judgment of the district court should be at this time reinstated in the interest of justice. Such action has been taken on past occasions.

The reason for my dissent is my conviction that the concept of independent contractor is capable of shrouding a great many sins; that it will not succeed where, as here, a statute or ordinance imposes a duty to provide specified safeguards or precautions for the safety of others. This is expressed in the Restatement (Second), of Torts § 424, which provides:

### Precautions Required by Statute or Regulation

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

So, under this principle, the owner will not be heard to say that it was the duty of the contractor to fulfill the duties imposed by statute. This is because the duty is on the owner to comply with the law and he cannot pass the buck. If he could, avoidance would be quite simple. The owner could avoid the law by entering an airtight contract with an "independent contractor."

The guiding principles are set forth in somewhat more detail and clarity in an annotation reported in 41 Am.Jur.2d *Independent Contractors* § 37 (1968), at 799–800:

Generally speaking there are many situations in which a person cannot absolve himself from liability by delegating his duties to an independent contractor. An employer has a nondelegable duty with respect to the taking of precautions during work which is dangerous in the absence of such precautions, which is inherently or intrinsically dangerous, or which from its nature is likely to render the premises dangerous to invitees, and also has a nondelegable duty with respect to the conduct of ultrahazardous work. Where a person, either by contract or by law, owes an obligation to another, he cannot escape liability for negligence in performance of such obligation by delegating the duty to an independent contractor. Thus, if a statute or ordinance requires a person to take certain precautions when work is being done, and such precautions are not taken, it is no defense that an independent contractor was employed to do the work and that the failure to take the precautions was due to the contractor's negligence. Likewise, one who, by a specific agreement, undertakes to do some particular thing, or to do it in a certain manner, cannot, by employing an independent contractor, avoid responsibility for an injury resulting from the nonperformance of any duty or duties which, under the express terms of the agreement or by implication of law, are assumed by the undertaker. An exception to the general rule of nonliability of an employer for the negligence of an independent contractor or the latter's servants exists where the employer has assumed a contractual obligation to perform the work.

At bar we have an activity which is inherently hazardous. The hazard is recognized by statute and ordinance. In addition, we have an owner who provides plans which do not attempt to adopt safeguards. In fact, it knowingly encourages the doing of the work without taking safeguards. Phillips would be liable for the failure of the contractor to follow its orders. It is certainly liable where the contractor follows its orders and thereby creates the risk.

One recent example is that which occurred in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975). In *Pierce v. Cook & Co.*, the action was for wrongful death in an automobile collision. The truck driver had been hauling wheat for the defendant-appellee in the case, Cook & Co., Inc. The trial court entered summary judgment. This was appealed and affirmed by this court. The judgment became final in 1971. The accident had actually happened in 1968. Relief was sought in the federal court based upon a change of law in the Oklahoma state court. The Oklahoma Supreme Court had overruled the prior decision which had strictly applied the independent contractor rule and had concluded that where there is a foreseeable risk of harm to others unless precautions are taken, one who is regularly engaged in a commercial enterprise as an integral part of the business is responsible for failure to exercise care in selecting a competent carrier. Failure to do so rendered him liable.

When this change of law was announced, a motion for relief was filed by the aggrieved party under Rule 60(b). Notwithstanding that this court's prior decision had become final in 1971, relief was granted following presentation of the case to this court en banc. The cause had been removed to federal court, and after the state court rule was changed, we held in an opinion by Judge Breitenstein that in this extraordinary condition, the plaintiff was the victim of an injustice, and although we did not re-

verse the decision of the trial court, we commended the Rule 60(b) motion to it.

While an appellate court will generally refuse to reopen a final judgment entered in a prior appeal, it will do so when substantial justice warrants. *See* 9 Moore's Federal Practice ¶ 110.25[2], at 274–75 (2d ed. 1975). The law of the case doctrine bars a second review of established law unless compelling circumstances warrant the action.

The Supreme Court has long recognized that an appellate court may review its earlier decision in a case and reopen that case when circumstances warrant it. *See Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

*Bromley v. Crisp*, 561 F.2d 1351, 1363 (10th Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978), recognized that this court could depart from its own earlier decision in the identical case when circumstances warranted such departure.

Other circuits have also recognized that where circumstances warrant reopening of an earlier appellate decision in the same case, such procedure may be pursued.

The Eighth Circuit has said that the earlier judgment will not be disturbed unless clearly erroneous and manifestly unjust. *See Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 730–31 (8th Cir. 1978).

The Fifth Circuit has said that a second review is permissible "if considerations of substantial justice warrant it." *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 663 (5th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975). Clearly a prior decision is not to be reopened and reversed except upon the basis of cogent reasons and to avoid manifest injustice. *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19–20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974).

The Sixth Circuit has refused to review a prior decision unless a new statute or intervening Supreme Court decision raises questions as to the viability of the earlier decision. *Hawkes v. Internal Revenue Service*, 507 F.2d 481, 482 n.1 (6th Cir. 1974).

In one instance the First Circuit refused to reopen a civil case, but recognized that it could be done in the case in which the previous error constituted a manifest injustice. *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1974).

In the present case the mix-up occurred because of the fact that the contract between Phillips Petroleum Company and the independent contractor purported to place all of the responsibility on the independent contractor, but when the case was tried a far different condition was revealed. It was shown that Phillips in actuality had exercised a good deal of control over the project and that it was the author of the plans which took the less expensive way out, that of not taking steps to prevent cave-ins. Thus, where it had control of the condition and acted negligently, that is, where it could reasonably foresee that a workman was going to be injured from this practice, it should be held responsible to the workman for its own negligent conduct. That is what the trial court held and that is the correct approach to the case. It is an approach that is not at odds with Utah law.

Here we have an activity that was contrary to law, both local and federal, which plainly created a hazard and thus the trial court was plainly correct in the first case in submitting the case to the jury. The jury's verdict was well founded both in law and in fact. A plain injustice occurred as a result of the reversal. The trial court was unable to carry out the mandate which ordered a new trial because the law of the case contained in this court's decision closed the door to a new trial. There was nothing for the trial court to do except vacate the judgment based upon the jury verdict and enter judgment for Phillips, which it did.

In this case the injustice which the litigant has suffered is clear. There is not and was not any way which would allow Phillips to shift responsibility to the contractor. To allow it to do so constituted grave error which should be corrected.

The case should be reopened in the interest of justice.